**In re Clifford N. JONES, Debtor.**

**Bankruptcy No. 388–37332 RCM–13.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Jan. 4, 1994.

Gregg D. Stevens, Atty., Tax Div., Dept. of Justice, Dallas, TX.

Gregory Gutman, Dallas, TX.

### MEMORANDUM OPINION

ROBERT McGUIRE, Chief Judge.

On November 22, 1993 came on to be heard the motion of debtor to hold the United States of America (the Internal Revenue Service) ("IRS") in contempt. Pursuant to Bankr.R. 7052, the following are the Court's findings of fact and conclusions of law in connection with such motion. The Court has jurisdiction of this contested matter under 28 U.S.C. § 1334(b) and the General Order of Reference in this District. *Also see, U.S. v. Nordic Village, Inc.,* — U.S. —, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) ("*Nordic Village*"). This is a core proceeding under 28 U.S.C. including § 157(b)(2)(A), (B), (I), and (O).

### Findings of Fact

This motion is brought against the IRS under the provisions of Bankr.R. 9020.

The movant filed his Chapter 13 petition in this Court on December 2, 1988.

The IRS was listed as a creditor on the debtor's schedules. This claim was listed as contingent and disputed. In addition, the

claim was described as a potential claim against Nexus Group, Inc. (the debtor's failed business) and debtor's personal liability with respect to same was denied.

A § 341 hearing was conducted on February 23, 1989.

Debtor's plan was confirmed by this Court on April 24, 1989. Such plan included a provision for the IRS claim. The IRS claim was considered a priority claim in the amount of $10, which was to be paid in full under the plan. The IRS never timely moved to revoke the confirmation under 11 U.S.C. § 1330. Bankr.R. 9024.

The movant completed his Chapter 13 plan that was confirmed by this Court. An order was entered on July 8, 1993, discharging the movant from all debts provided for by the plan. The IRS never moved to set aside this order.

On or about August 16, 1993, the IRS had issued a written notice to the movant captioned "Notice of Intent to Levy" allegedly related to what is described in the notice as a "civ pen". The notice specified that the alleged civil penalty indebtedness was for the "tax period 06–30–88". Apparently, this was a reference to the second quarter of 1988. Stipulated Fact ("SF") ¶ 5. (See p. 8 of IRS answer). A true and correct copy of that Notice of Intent to Levy was attached to the motion as Exhibit A. IRS Exhibit 4 was its proof of claim filed February 28, 1991, showing priority taxes due of $9,095 for the December 31, 1986 tax period, and 100% penalty of $22,767.85 for the June 30, 1988 tax period. This penalty tax had to do with Nexus Group, Inc. Apparently, the IRS disputes only the discharge of the $22,767.85 penalty tax, and not the $9,095 tax.

On or about August 27, 1993 debtor responded to the IRS' notice of intent to levy. That letter, to the Austin office of the IRS where the notice originated, informed the IRS of the Chapter 13 of the debtor, and the debtor's assertion that the debt had been discharged in accordance with this Court's order. The letter also instructed the IRS to refrain from any further attempts to collect its alleged indebtedness, unless they are in accordance with the Bankruptcy Code and Rules. A true and correct copy of the correspondence, as well as copies of the certified mail documentation reflecting receipt, were attached to the motion as exhibit B.

On or about September 21, 1993, the IRS issued a Notice of Levy and delivered such notice to the Dallas Office of Bank One, Texas N.A. In accordance with this notice, Bank One froze the funds contained in debtor's account, number 9837038301. The account contained $268.43 at the time it was frozen. A true and correct copy of the Notice of Levy, together with a letter from the bank to the debtor, was attached to the motion as exhibit C. Before the Debtor's contempt motion was filed, the IRS released its levy on the bank account.

### Conclusions of Law

Debtor has moved to hold the United States of America in contempt for violation of § 524(a)(2) because of the IRS collection and levy actions in August of 1993.

The initial inquiry is whether the IRS claim has been discharged. The debtor received a discharge upon the completion of his plan on July 8, 1993. The IRS contends that its claim for the 100% penalty was not included in the discharge on two grounds.

First, the IRS maintains that the debt arose post-petition and is therefore not dischargeable. The 100% penalty ·was assessed after the petition date, however it was based on a prepetition tax claim. These taxes are prepetition even though the IRS did not assess them until after the petition date. The accrual date of the tax liability and not the date of the IRS audit determines the character of the taxes. *See In re Ryan,* 78 B.R. 175, 177 (Bankr.E.D.Tenn.1987); *In re Workman,* 108 B.R. 826 (Bankr.M.D.Ga. 1989); *cf. In re Miller,* 118 B.R. 76 (E.D.Tenn.1989). The 100% penalty assessed by the IRS is a prepetition claim. *In re Ripley,* 926 F.2d 440 (5th Cir.1991), was cited by the IRS for the proposition that the penalty tax is a 11 U.S.C. 1305(a) post-petition tax. The tax in the instant case is distinguishable because, as the *Ripley* court pointed out: "In *Miller,* the government sought recovery of a *truly quarterly* tax

rather than of annual taxes, as in this case." *Id.* at 446. (Emphasis added). The penalty taxes the IRS seeks in this case are likewise on a truly quarterly tax, and therefore, do not fall within § 1305(a).

Second, the IRS maintains that it was improperly scheduled and not properly dealt with in the plan, and therefore its claim was not discharged. The debtor placed the IRS in his schedules as an unliquidated and contingent claim. Its claim was then treated under the plan as being a $10 priority claim, which under the plan was to be paid in full. The IRS did not object to the confirmation of the plan.

A governmental debt may be scheduled as a disputed or estimated amount. *In re Ryan, supra* at 175, 177–178. The amounts and classes of claims will be determined from the proofs of claims that are filed. *Id.* The debtor did provide for a priority tax claim and a percentage payout on unsecured claims in his plan. *In re Gregory,* 705 F.2d 1118 (9th Cir.1983). (Plan which stated that it provided for zero payment to the unsecured creditors "provided for" such creditors). *Also see, In re Border,* 116 B.R. 588 (Bankr. S.D.Ohio 1990), and *In re Pack,* 105 B.R. 703 (Bankr.M.D.Fla.1989).

The IRS did not file a timely proof of claim. A proof of claim must be filed within 90 days after the first date set for the meeting of creditors called pursuant to § 341(a) of the code. Bankr.Rule 3002(c). The debtors § 341 meeting was held on February 23, 1989. The IRS received bold-faced notice from the Court that: "CLAIMS WHICH ARE NOT FILED BY 05/24/89 WILL NOT BE ALLOWED EXCEPT AS OTHERWISE PROVIDED BY LAW." The IRS did not file its proof of claim until February 28, 1991, or one year and nine months after the bar date for filing proofs of claims.

Failure to file a timely proof of claim has generally been held to disallow the claim. *See Jones v. Arross,* 9 F.3d 79 (10th Cir. 1993); *In re Chavis,* 160 B.R. 804 (Bankr. S.Dak.1993); *In re Tomlan,* 102 B.R. 790, 791–92 (E.D.Wash.1989) aff'd, adopted, 907 F.2d 114 (9th Cir.1990); *In re Messics,* 159 B.R. 803 (Bankr.N.D.Ohio 1993); *In re Osborne,* 159 B.R. 570, 578 (Bankr.C.D.Cal.

1993); *In re Turner,* 157 B.R. 904 (Bankr. N.D.Ala.1993); *In re Zimmerman,* 156 B.R. 192 (Bankr.W.D.Mich.1993) (en banc); *In re Johnson,* 156 B.R. 557 (Bankr.N.D.Ill.1993); *In re Bailey,* 151 B.R. 28 (Bankr.N.D.N.Y. 1993). Some courts have held that an untimely filing merely effects the treatment of the claim and does not cause disallowance of the claim. *See In re Babbin,* 156 B.R. 838 (Bankr.D.Colo.1993); *In re Judkins,* 151 B.R. 553 (Bankr.D.Colo.1993); *In re Hausladen,* 146 B.R. 557 (Bankr.D.Minn.1992) (en banc).

The *Hausladen* Court held that failure to file a timely proof of claim only effects the treatment of the claim and does not result in the disallowance of that claim. This conclusion was based upon the interplay between 11 U.S.C. § 502 and Bankruptcy Rule 3002(c). The Court concluded that the absence of a § 502 provision disallowing untimely claims took precedence over any time bar that is present in Rule 3002. *In re Hausladen,* 146 B.R. 557 (Bankr.D.Minn. 1992) (en banc).

■ This Court respectfully declines to follow the *Hausladen* opinion, and finds the reasoning set forth in *In re Zimmerman,* 156 B.R. 192 (Bankr.W.D.Mich.1993) (en banc) to be more compelling. The *Zimmerman* Court found that there was not any conflict between § 502 and Rule 3002(c), and Rule 3002(c) acts as a time bar for filing proofs of claims. The IRS could have filed a motion to extend the period to file its proof of claim under Bankr.Rule 3002(c)(1), but it failed to do so. As a result, the IRS' claim is disallowed due to the untimely filing of its proof of claim.

The debt was provided for in the plan (*In re Ryan, supra* ), but the IRS did not receive payment due to its failure to properly file a proof of claim. As a result the debtor did complete his plan and properly received a discharge of the IRS debt on July 8, 1993. *See, e.g., In re Workman, supra; In re Ryan, supra. See also, In re Border,* 116 B.R. 588 (Bankr.S.D.Ohio 1990) (Reaching the same conclusion where the IRS failed to file a proof of claim altogether).

■ The IRS attempt to collect on this discharged debt in August of 1993 resulted in this contempt motion. Section 524(a)(2) creates a permanent injunction against creditors attempting to collect on discharged debts. *See, In re Jet Florida Systems, Inc.*, 883 F.2d 970, 972 (11th Cir.1989); *In re Norris Grain Co.*, 138 B.R. 1004, 1007 (Bankr. M.D.Fla.1992), *aff'd, In re Norris Grain Co.*, 1993 U.S. Dist. Lexis 12,064 (M.D.Fla.1993) (unpublished opinion). In *In re Germaine*, 152 B.R. 619, 623 (Bankr. 9th Cir.1993), a case where the Chapter 13 debtor sought post-discharge attorney fees from the IRS for violation of a § 524(a) injunction, the court held there was no sovereign immunity waiver under 11 U.S.C. § 106(a) and (c), but that the Bankruptcy Court had power to award attorney fees under 26 U.S.C. § 7430, provided that five conditions are satisfied—to wit:

> In general, a 'prevailing party' may be awarded reasonable administrative and reasonable litigation costs if the party has: (1) exhausted the administrative remedies; (2) established that the IRS' position in the proceeding was not substantially justified; (3) substantially prevailed with respect to the amount in controversy or with respect to the most significant issue or set of issues presented; (4) established that the prevailing party's net worth did not exceed $2 million at the time the proceeding was commenced; and (5) not unreasonably protracted any portion of the proceeding. 26 U.S.C. § 7430(b) and (c).

*Id.* at 627. In *In re Grewe*, 4 F.3d 299, 305 (4th Cir.1993), the court refers to attorney's need to satisfy three elements. The *Germaine* court explained its position on sovereign immunity as follows:

> ■ Although § 106(a) can effectively waive sovereign immunity, it is not properly invoked on the facts before us. Essentially, § 106(a) has three requirements: the government must have filed a claim against the estate; the claim against the government must arise from the same transaction or occurrence as the government's claim; the claim against the government must be property of the estate. *In re Graham*, 981 F.2d 1135, 1141 (10th Cir.1992).

Applying basically the same reasoning as in the previous appeal by the parties before this Panel, the debtor's claim for attorney's fees does not fall within the scope of section 106(a): The IRS has not asserted a claim against the bankruptcy estate that arises from the same transaction or occurrence as the debtor's claim against the IRS; and the claim for fees against the IRS belongs to the debtor, not to the estate.

■ With respect to the IRS' claim, § 106(a) requires the assertion of a claim against the estate, not merely the assertion of a claim against the debtor....

Where, as in this case, the governmental entity does not assert a claim against the estate or attempt to collect from estate assets, but merely asserts a right to payment from the debtor after discharge and from assets that are no longer part of the estate, the purposes underlying section 106(a) are not implicated. The IRS did not seek or obtain a distribution from the estate with respect to those claims that are related to the debtor's claim against the IRS. Rather, it merely sought collection from the debtor and from assets which had revested in the debtor. *See* § 1327(b) and the discussion below. If it had been successful in its post-discharge collection efforts, the IRS' collection would not have reduced the assets of the estate available to pay other creditors of the estate. It follows that the IRS did not assert a claim against the estate that was related to the debtor's claim for damages against the IRS.

■ Additionally, section 106(a) cannot apply because the claim against the IRS belongs to the debtor, not to the estate.

\* \* \* \* \* \*

In this case, the cause of action or property interest at issue arose not only after confirmation, but also after consummation of the plan and the entry of a discharge pursuant to § 1328. The $2,000 awarded here is for attorney's fees. Obviously, this recovery will not be used to pay creditors of the debtor or otherwise inure to the benefit of the estate. Similarly, there is no

contention that if the debtor could not recover damages from the IRS, the estate would bear the loss. Therefore, the cause of action against the IRS belongs to the debtor and not to the estate for purposes of § 106(a).

*Id.* at 623–624.

■ The IRS committed two acts that were in violation of the injunction. The letter of August 16, 1993 was an attempt to collect a debt that had been previously discharged. The levy on the Bank One account was also an attempt to collect on the debt that had been discharged. Accordingly, this Court finds the IRS in contempt for these two actions against the debtor.

Normally, if a question of sovereign immunity is not involved, the proper remedy for contempt is the assessment of the damages caused by a respondent's actions, including attorney's fees. *See, In re Germaine, supra; In re Kiker,* 98 B.R. 103, 106–107 (Bankr. N.D.Ga.1988).

The Bank One account had $268.43 when the levy attached on September 21, 1993. The levy was released before the contempt motion was filed.

Debtor asserted damages based on charges assessed for checks written and subsequently dishonored due to the levy, and a right to damages based on severe aggravation, worry, concern, embarrassment and humiliation over the actions of the IRS. Also, Debtor claimed a right to damages based on loss of credit worthiness or credibility with anyone whose check may have been dishonored as a result of the levy. Debtor did not produce sufficient evidence to support these claims. It is unnecessary to reach the issue of whether recovery of such type damages is precluded by reason of sovereign immunity. In this connection, see cases discussed hereafter, *for example, In re Shafer,* 146 B.R. 477 (D.Kan.1992), *amended; In re Shafer,* 148 B.R. 617 (D.Kan.1992); *In re Brown,* 159 B.R. 1014 (Bankr.S.D.Ga.1993).

Debtor also asserted a right to damages based on attorney fees incurred related to its motion for contempt. Attorney fees are a proper basis for damages in a civil contempt case. Mr. Gutman testified that he had spent nine hours of attorney time at a rate of $150 per hour on the events surrounding the IRS action, and contempt. There was a dispute over the amount of time necessary to resolve the dispute. While eventually the levy on the account was withdrawn prior to the filing of the contempt motion, there was no assurance that, without the filing of the motion, the IRS would not reinstitute collection procedures. It appears that approximately two hours were reasonably involved prior to drafting the motion, two hours were reasonably involved in the drafting and filing of the motion, and two and one-half hours were reasonably involved in preparing for and presenting the contempt motion. Mr. Gutman's rate of $150 per hour is a reasonable hourly rate.

The IRS contends that the rate for attorney fees assessed against the IRS, under 26 U.S.C. § 7430, is limited to $75 per hour. Case law, under such statute, indicates that such rate may fluctuate under certain conditions.[1]

### *Sovereign Immunity*

Courts have taken opposite approaches to the applicability of sovereign immunity in contempt proceedings. One line of cases hold that the IRS cannot be held liable for money damages as a result of sovereign immunity. A second line of cases finds that sovereign immunity does not preclude the award of monetary damages in civil contempt cases. Various courts have held that *Hoffman v. Connecticut Dept. of Income Maintenance,* 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) (*"Hoffman"*), only applies to state governments due to its reliance on the Eleventh Amendment. See e.g. *In re Fernandez,* 132 B.R. 775 (M.D.Fla.1991) affirming in part and remanding 125 B.R. 317 (Bankr.M.D.Fla.1991). *See also, Davis v.*

---

1. *See, Bode v. U.S.,* 919 F.2d 1044 (5th Cir.1990) (providing for an amount in excess of $75 per hour if special factors exist); *Powell v. C.I.R.,* 891 F.2d 1167 (5th Cir.1990) (same); *Cassato v. C.I.R.,* 936 F.2d 736 (2nd Cir.1991) (providing a cost of living adjustment on the $75 statutory cap on attorney fees in § 7430); *Buchanan v. United States,* 755 F.Supp. 319 (D.Ore.1990) (same); *Bayer v. C.I.R.,* 98 T.C. 19, 1992 WL 1954 (1992) (same).

*I.R.S.*, 136 B.R. 414, 419 (E.D.Va.1992) (Applying *Hoffman, supra,* prior to the issuance of the *Nordic Village, supra,* opinion and reaching the same result).

Cases adopting *Nordic Village, supra,* sovereign immunity:

*In re Toti,* 141 B.R. 126 (Bankr.E.D.Mich. 1992) *rev'd on other grounds,* 149 B.R. 829 (E.D.Mich.1993), involves debt that had been discharged pursuant to a Chapter 7 case. The IRS levied on post-petition pension plan payments and post-petition commissions in violation of the automatic stay. *Id.* at 131. The Court was considering the imposition of civil contempt sanctions. *Id.* at 133. The Court, relying on the *Nordic Village* opinion, found that section 106(c) did not explicitly waive sovereign immunity as to monetary damages, therefore only permitting declaratory and injunctive relief.

*In re Shafer, supra,* also found that sovereign immunity applies to monetary damages sought under § 106(c). *In re Shafer,* 146 B.R. 477, 479 (D.Kan.1992) However, the Court, in its amended opinion, found that 28 U.S.C. 2412(b) Equal Access to Justice Act ("EAJA") does not apply to any proceeding which relates to a tax or penalty collection. *In re Shafer,* 148 B.R. 617, 619 (D.Kan.1992). The court held that the proper statute authorizing the award of attorney fees is 26 U.S.C. 7430(a)(1) in a civil contempt proceeding resulting from a violation of the discharge injunction by HUD and the IRS. *Id.*

*In re Nichols,* 143 B.R. 104 (Bankr. S.D.Ohio 1992), involves a civil contempt proceeding against the IRS for violation of the automatic stay. The IRS did not file a proof of claim, thereby allegedly limiting the waiver of sovereign immunity to section 106(c).[2] The Court then found that section 106(c) does not waive sovereign immunity for monetary relief for a violation of the automatic stay. The opinion relies exclusively on *Nordic Village.*

*In re Stuber,* 142 B.R. 435 (Bankr.D.Kan. 1992), involves a civil contempt proceeding against the IRS for violation of the automatic

stay. The Court held that the government had not waived its sovereign immunity in section 106(c) based on the *Nordic Village* opinion.

*In re Dillon,* 148 B.R. 852 (Bankr. E.D.Tenn.1992), also involves a situation where the IRS violated the automatic stay. This was a civil contempt proceeding seeking recovery of monetary damages pursuant to § 362(h). The IRS had not filed a proof of claim. The Court, citing *Nordic Village,* held that the bankruptcy court can only impose declaratory and injunctive relief against the IRS. It held that it was without jurisdiction to award monetary damages. *Id.* at 854.

*In re Brown, supra,* involves an adversary proceeding to recover damages for violation of the § 524 injunction in a Chapter 13 case and the automatic stay. It does not appear to be a contempt action. The court, in a well-reasoned decision, outlines why §§ 106(a) and 106(b) do not waive sovereign immunity. Section 106(a) does not apply because the recovery is not property of the estate. Section 106(b) does not apply because the estate is not seeking a set off. The Court the holds that § 106(c) does not waive sovereign immunity in the case of a violation of the § 524 injunction citing *Nordic Village.* The Court disagrees with the sanctions/money judgment difference proposed in *In re Tyson,* 145 B.R. 91 (Bankr.M.D.Fla.1992) (Involving § 362(h) and contempt proceedings); *In re Moulton,* 146 B.R. 495 (Bankr. M.D.Fla.1992) (Involving § 524 and contempt proceedings); and *In re Daniels,* 150 B.R. 985 (Bankr.M.D.Ga.1992). The *Brown* court, *supra* at 1018, also discusses why there was a § 362 violation and a § 106(a) waiver on that violation. The basis of the waiver stems from the fact that the IRS had a claim.

Cases that distinguish *Nordic Village:*

In *Taborski v. U.S. I.R.S.,* 141 B.R. 959 (N.D.Ill.1992), the court finds 11 U.S.C. § 106(a) waiver of sovereign immunity in a Chapter 13 prior to payout.

*In re Tyson, supra,* and *In re Moulton, supra,* are two decisions by Judge Paskay

---

**2.** On the alleged non-necessity of IRS filing a claim, see the discussion of *In re Brown,* 159

B.R. 1014 (Bankr.S.D.Ga.1993) hereafter.

that distinguish contempt sanctions from the prohibition against monetary damages in *Nordic Village.* Both of these cases rely on the distinction between money judgments and sanctions. Judge Paskay asserts that *Nordic Village* only applies to money judgments. He finds that sanctions imposed as part of contempt orders are not money judgments. Therefore he distinguishes the present case from *Nordic Village* and allows the recovery of the monetary damages. See also *In re Daniels, supra,* (Involving the § 524 injunction and following Judge Paskay's rulings).

*In re Long,* 142 B.R. 234 (Bankr.S.D.Ohio 1992), involves a civil contempt proceeding against the IRS for violations of the automatic stay. The debtor filing the contempt motion was a Chapter 13 post-confirmation, pre-discharge debtor, and, therefore, the case is distinguishable from *In re Germaine, supra.* The *Long* Court holds that the filing of the proof of claim by the IRS and the circumstances surrounding the instant action satisfy the requirements of section 106(a). The Court states that *Nordic Village* is not relevant, because it only applies to section 106(c), and in these situations the debtor does not need to rely on section 106(c). Also the Court states that the debtor is only entitled to money in excess of the IRS claim, because the rest is used as an offset. *Id.* at 238. See also *In re Pinkstaff,* 974 F.2d 113 (9th Cir. 1992) (where the court held, in a pre-confirmation Chapter 13 case, that the IRS waived sovereign immunity under § 106(a) and debtor was entitled to § 362(h) damages); *In re Lile,* 161 B.R. 788 (S.D.Tex.1993) (where the court found a § 106(a) waiver of sovereign immunity) (Also stating, at p. 5, that attorney fees could be granted without resorting to 26 U.S.C. § 7430).

*In re Sneller,* 153 B.R. 343 (Bankr. M.D.Ala.1993), involves a violation of the 524 injunction by the IRS. The Court asserts that sovereign immunity has been waived by virtue of the EAJA. *Id.* at 344.

*In re Abernathy,* 150 B.R. 688 (Bankr. N.D.Ill.1993) (Ginsberg, J.) involves a violation of the 524 injunction by the IRS. The court held that 26 U.S.C. § 7430 waives sovereign immunity and finds that monetary damages for attorney fees and litigation costs can be granted under that statute.

### Sovereign Immunity Was Not Waived Under 11 U.S.C. § 106, But Attorney Fees Were Available to Debtor Under 26 U.S.C. § 7430 If Such Statute Had Been Otherwise Complied With By Debtor

█▌ Sovereign immunity was not waived under 11 U.S.C. § 106(a) for the reasons stated in *In re Germaine, supra,* and *In re Brown, supra,* previously discussed. Sovereign immunity was not waived under 11 U.S.C. § 106(c) for the reasons stated in *In re Shafer, supra,* and *In re Brown, supra* at 1019.

Under 26 U.S.C. § 7430, debtor would be entitled to his attorney fees if he complied with the prerequisites of such statute. *In re Shafer, supra; In re Grewe, supra; In re Abernathy, supra. In re Sneller, supra,* like the present case, was a Chapter 13 post discharge IRS violation, and the court concluded that 28 U.S.C. § 2412, rather than 26 U.S.C. § 7430, was applicable because, in that case, the IRS tax had been "admittedly fully paid", whereas in the present case, the IRS contested such payment. *See also, In re Shafer, supra,* also involving a violation of the discharge injunction by the IRS and HUD. Section 7430 is the appropriate statute governing the recovery of attorney fees in a civil contempt proceeding against the IRS, resulting from a violation of the discharge injunction.

### Debtor Not Entitled to § 7430 Attorney Fees Because of Failure to Exhaust Administrative Remedies

In *In re Grewe, supra* at 306–307, the court stated:

Section § [sic] 7430(b)(1) provides that litigation costs shall not be awarded 'unless the court determines that the prevailing party has exhausted the administrative remedies available to such party within the [IRS].' Exhausting administrative challenges to the IRS's filing of a federal tax lien requires the taxpayer to 'submit[ ] to the district director of the district having jurisdiction over the dispute a written

claim for relief reciting facts and circumstances sufficient to show the nature of the relief requested and that the [taxpayer] is entitled to such relief' and allowing the district director a reasonable time to respond in writing. 26 CFR § 301.7430(d) (1992). Because the Grewes failed to pursue this administrative remedy, but instead challenged the IRS' actions by immediately filing suit in the bankruptcy court, they cannot recover attorneys' fees under § 7430. *Kenlin* [*Industries Inc. v. U.S.*], 927 F.2d [782] at 789 [ (4th Cir.1991) ] (the 'failure [to exhaust administrative remedies] is conclusive against an award of attorney's fees....').[6]

6. The Grewes also claim that there was no administrative remedy available 'to make the IRS give back money taken in violation of 11 U.S.C. § 524, to stop a levy in violation of that same law, or to have removed a lien *after* suit was initiated in violation of law.' (Brief of Appellees 15). However, 26 CFR § 301.7430(d) provides administrative remedies for IRS 'actions involving summonses, *levies, liens* .. and termination assessments, *etc.*' (emphasis added). Thus, this regulation provided the Grewes with an adequate administrative remedy.

Some courts have held that, after a levy, a debtor does not have to further exhaust administrative remedies. *In re Yochum*, 156 B.R. 816, 820 (D.Nev.1993); *In re Germaine, supra.* However, in this case where the IRS dropped the levy prior to the filing of the motion, it appears that a letter to the District Director would have been effective and debtor failed to exhaust his administrative remedies, and therefore, is not entitled to recover attorney fees. 26 CFR § 301.7430(d). *In re Grewe, supra.*

The IRS debt referred to is discharged, but the debtor is not entitled to recover his attorney fees for the reasons previously stated.

Alternatively, the foregoing Findings of Fact and Conclusions of Law, and Judgment entered in connection herewith constitutes Proposed Findings of Fact and Conclusions of Law.

### BANKRUPTCY RULE 9021 ORDER FINDING DEBT DISCHARGED BUT DENYING DEBTOR'S RECOVERY OF ATTORNEY FEES

For the reasons stated in the Memorandum Opinion signed this date, the Court finds the following judgment is proper.

It is, therefore, **ORDERED** that the debt of Clifford N. Jones to the IRS referred to in the Memorandum Opinion signed this date is found to have been discharged under 11 U.S.C. §§ 524 and 1328, and the IRS is permanently enjoined from attempting to collect same, but that debtor's claim for B. Rule 9020 contempt damages, including attorney fees, is denied.